**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**VANESSA FROGGE,**

                    **Plaintiff,**

**v.**                                                                    **Civil Action No. 1:17-CV-155**
                                                                              **JUDGE KLEEH**

**CRAIG FOX, d/b/a Mountain
Line Transit Authority,**

                    **Defendant.**

## REPORT AND RECOMMENDATION RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED

This matter is before the undersigned pursuant to Defendant, Craig Fox's, d/b/a Mountain Line Transit Authority, Motion for Summary Judgment (ECF No. 45). Senior United States District Court Judge Irene M. Keeley entered an order, referring this matter to the undersigned for a report and recommendations. (ECF No. 2).

This case was then reassigned to United States District Judge Thomas S. Kleeh on November 30, 2018. (ECF No. 42). This matter is now ripe for a report and recommendation to the presiding District Judge. For the reasons set forth herein, the undersigned **RECOMMENDS** the Defendant's Motion for Summary Judgment (ECF No. 45) be **GRANTED** in its entirety, and Plaintiff's Amended Complaint (ECF No. 3-5) be **DISMISSED WITH PREJUDICE**.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On August 29, 2017, Plaintiff, Vanessa Frogge, filed her initial Complaint in the Magistrate Court of Monongalia County in Morgantown, West Virginia, and asserted a claim of discrimination against Defendant, Craig Fox, d.b.a. Mountain Line Transit Authority, and sought $10,000 in damages. (ECF No. 3-1 at 1). On August 29, 2017, Plaintiff filed an Amended Complaint and brought a claim for discrimination against Defendant, Craig Fox, pursuant to

1

Title II of the Americans with Disabilities Act of 1990 (hereinafter "ADA"). (ECF No. 3-5). Plaintiff alleged that Defendant Fox discriminated against her as "an opinionated individual acting on his/her own behalf" when he denied her, "Route Deviation Request" in December 2016 and that such conduct "was outside the scope of his employment as a government official." (ECF No. 3-5 at 9).

According to her Amended Complaint, Plaintiff suffers from a neck condition and submitted a route deviation request to Mountain Line, asking for a new bus stop to be established to accommodate her condition. She further alleged that "there is no sidewalk connecting [her] apartment to a hill and several flights of stairs leading to the bus stop." (ECF No. 3-5 at 8). She also alleges that when Defendant conducted a site visit to consider the proposed deviation request, he failed to include consideration for her disability. Id. Defendant denied Plaintiff's request determining that the roads in Plaintiff's apartment complex were too small and did not have an acceptable place for the bus to turn around. Mr. Fox further determined that fundamental changes would have significantly impacted passengers. (ECF No. 3-5 at 5, 6).

On June 2, 2017, Defendant Craig Fox, d.b.a. the Mountain Line Transit Authority timely filed a Notice of Removal of Plaintiff's suit to the Circuit Court of Monongalia County under W. Va. Code § 50-4-8, at which time the Circuit Court assumed control of the matter. (ECF No. 3-1 at 30-34). At the same time, Mr. Fox filed a Motion to Dismiss Plaintiff's Complaint, arguing that the Complaint was made in violation of W. Va. Code §§ 29-12A-13; 29-12A-6(d). (ECF No. 4-1 at 2).

The Monongalia County Circuit Court Judge ordered Plaintiff to file an amended complaint within twenty (20) days of the hearing. (ECF No. 4-1 at 2). Ms. Frogge filed an Amended Complaint against Defendant, Craig Fox, d/b/a Mountain Line Transit Authority, in

the Circuit Court of Monongalia County, West Virginia, on August 29, 2017. (ECF No 3-5). Plaintiff's Amended Complaint (ECF No. 3-5) alleged that Defendant discriminated against her based on her disability and brought the action pursuant to the ADA. Subsequently, this case was removed to the United States District Court for the Northern District of West Virginia, on September 8, 2017. (ECF No. 1).

Discovery in this matter closed on January 3, 2019. (ECF No. 27, at 1). And on February 1, 2019, Defendant filed a Motion for Summary Judgment. (ECF No. 45). On February 4, 2019, the undersigned sent Plaintiff a *Roseboro Notice* informing Plaintiff of her right to respond to Defendant's Motion for Summary Judgment. (ECF No. 47).  Plaintiff filed her Response to the Motion on March 26, 2019. (ECF No. 57). On March 22, 2019, the Defendant filed a Reply to Plaintiff's Response. (ECF No. 56)[1] This matter is now ripe for the undersigned's analysis of Defendant's Motion for Summary Judgment.

## II.   CONTENTIONS OF THE PARTIES

### a. Defendant's Motion

In Defendant's Motion, Defendant argued that Plaintiff has not established all of the elements required in an ADA discrimination claim. Defendant first argues that Plaintiff's condition does not meet the ADA's definition of "disabled." Defendant argues that while Plaintiff's neck and back condition is not disputed by either party, Plaintiff has failed to demonstrate that the condition "substantially limits one or more of the major life activities of" Plaintiff. Defendant argues that Plaintiff does not have any medical restrictions on her lifestyle, ambulates independently, and merely has "some difficulty" walking uphill, playing basketball, and jumping rope. (ECF No. 46, at 10).

---

[1] Defendant's Reply to Plaintiff's Response was filed prior to Plaintiff's Response. The undersigned believes that a copy of the Response was sent to Defendant and received prior to Plaintiff was able to docket it, which lead Defendant to file a Reply.

Defendant also argues that there is no evidence in the record that supports intentional discrimination or disparate treatment. Specifically, Defendant pointed to Plaintiff's deposition, in which she stated that she did not know why there was discrimination, but just that she believed there to have been discrimination. (ECF No. 46, at 12). Defendant also stated that Defendant has properly demonstrated that there was another reason that Plaintiff's deviation request was denied—Defendant's inability to restructure the nature of the bus route. Defendant argues that the Federal Code Regulations for the Department of Transportation allow the denial of a modification to a service when, like in this case, a modification would significantly alter the nature of a program or service. (ECF No. 46, at 14-15). Furthermore, Defendant renewed their argument that qualified immunity bars this suit against Defendant.

**b. Plaintiff's Response**

On March 26, 2019, Plaintiff filed Objections to Judge Michael John Aloi's Report & Recommendation. (ECF No. 57). Plaintiff stated that she believed discrimination to be "illegal in America regardless of the business" and she "never assumed to know the reason why Craig Fox discriminated against [her] by denying [her] request." (ECF No. 57, at 3). Plaintiff reiterated her argument that "the only way he could have come to the conclusion to deny my request was if [Defendant] acted outside of government regulations. Hence, he acted with bias forming his own opinions versus within the expectations of his employment. That, more specifically, is the act of discrimination; Craig Fox knew the rules & chose to omit them." Id. at 6.

Plaintiff also stated that "despite small roads all over Morgantown & bus routes, the 5 minutes it would take to pick [her] up & the different sized buses that could have been utilized, including a van (New Fit), [she] was not even offered limited deviation assistance with smaller buses." Id. at 7. Plaintiff further stated that her "previous deviation request included uncanny,

similar circumstances with a small road & parking lot," and were granted. Id. While Plaintiff titled this pleading as objections to a Report and Recommendation (ECF No. 16), Plaintiff incorporated the document as a Response to Defendant's Motion for Summary Judgment.[2]

### c. Defendant's Reply

On March 22, 2019, Defendant filed a Reply to Plaintiff's Response (ECF No. 56). Defendant first argues that Plaintiff's Response should be dismissed as untimely. Id. at 3. Defendant then argues that Plaintiff makes conclusory statements regarding the discrimination, specifically, that a smaller bus could be utilized, that MLTA has previously provided deviation requests for convenient access, and that the only reason that her deviation request could have been denied was because of discrimination. Defendant stated that none of these claims are supported by facts in the Record and are mere allegations. Furthermore, Defendant argues that Plaintiff's new Title VI claim is not contained in the Complaint nor is there any evidence that Plaintiff was discriminated against her based upon race.[3]

## III.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
 (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or

---

[2] On February 28, 2018, the undersigned entered a Report and Recommendation recommending that Plaintiff's Amended Complaint be dismissed. (ECF No. 16). Plaintiff was given 14 days to object. On March 12, 2018, Plaintiff filed her objections. (ECF No. 18). On June 26, 2018, Senior United States District Judge Keeley denied the undersigned's Report and Recommendation and Denied Defendant's Motion to Dismiss. (ECF No. 20). On March 26, 2019, Plaintiff filed objections, again, to the undersigned's Report and Recommendation. (ECF No. 57). Plaintiff specifically incorporates that document to serve as her Response to Defendant's Motion for Summary Judgment.
[3] In her Response of March 26, 2019, Plaintiff discusses her Title VI discrimination claim. Nowhere in the pleadings has Plaintiff presented any allegation that the alleged discrimination that she suffered was a result of her race or ethnicity.

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## IV.    ANALYSIS

A plaintiff bringing a discrimination claim for a violation  under the ADA must show that 1) plaintiff had a disability within the definition of disabled under the ADA, 2) that the plaintiff was "otherwise qualified to receive the benefits of a public service, program, or activity," and 3) that plaintiff "was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against on the basis of her disability." <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 373, 498 (4th Cir. 2005).

### a.  The Plaintiff is not disabled under the definition of Americans with Disabilities Act

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." "Substantially limits" is defined as "significantly restricted as to the condition, manner or duration to the condition, manner, or duration under which the average person in the general population can perform that same major life activity," or the inability "to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(1)(ii). "Examples of 'major life activities' are 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" <u>Id.</u> Some limitation in "major life activities" does *not* always equal a "substantial limitation." <u>Stewart v. Weast</u>, 228 F. Supp. 2d 660 (D. Md. 2002).

First, there is no genuine issue of material fact that Plaintiff has a physical impairment. Plaintiff testified that she suffers from degenerative disc disease of the neck (ECF No. 46-1, at

9). There is no evidence in the Record to suggest otherwise. Defendant stated that he does not contest this allegation. (ECF No. 46, at 7). However, to qualify as a disability, this condition must "substantially limit one or more" of Plaintiff's major life activities.

Second, there is no evidence in the Record that Plaintiff is substantially limited in a major life activity by her condition. Defendant presented this argument in its Memorandum in Support of its Motion for Summary Judgment stating that there is no evidence that Plaintiff could not walk from her door step to Scott Avenue to utilize the bus; that the record does not contain any evidence about Plaintiff's inability to walk; and that Plaintiff does not have any physician restrictions place regarding Plaintiff's walking. Specifically, Defendant points to Penny v. United States, 128 F.3d 408 (6th Cir. 1997) as support for its contention that while Plaintiff may have *some* limitations in her ability to walk, she is not *substantially* limited to satisfy the definition of "disabled." In Penny and upon motion for summary judgment, the court found that the plaintiff had not "adduced sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his injury significantly restricted [plaintiff's] ability to walk as compared with an average person in the general population." Penny, 128 F.3d at 415.

When given the opportunity to respond to Defendant's Motion and Memorandum, Plaintiff failed to present specific evidence to establish her condition as an impairment that substantially limits a major life activity—walking. Plaintiff admitted in her deposition testimony that the only major life activity implicated by her claim is the ability to walk[4], Ex. B at pp. 74:22–77:5, nor has any physician placed any medical restrictions on Plaintiff associated with her ability to walk. Ex. B at pp. 57:15–60:12.

---

[4] ECF No. 46-1, at 22 (Q: You're not claiming that you cannot walk to the bus stop; is that correct? A: That is around the discrimination. That is part – I would say, yes, it is part of the claim because if I had the deviation request I wouldn't have to walk up the mountain to the bus stop from where my apartment is. If I had the deviation request it wouldn't be me having to walk up a hill to go to the bus stop.")

Specifically, Plaintiff testified as to the following:

Q:      Okay. Has anyone ever told you you shouldn't climb stairs with your condition?
A:      I don't recall any lower body restrictions at all.
Q:      So no doctors told you you can't walk under your conditions?
A:      No, I don't think so.
. . .
Q:      Has anyone told you you can't ambulate?
A:      Not that I – not that I recall. The terms sounds.
        familiar but I don't recall anyone telling me that I cannot walk or ambulate.
Q:      Has any doctor instructed you you should be walking on sidewalks and not in the road or in the grass.
A:      None that I can recall.
. . .
Q:      Does that say "Can ambulate independently"?
A:      It does.
Q:      And is "yes" circled?
A:      It is.

Id. at 46-1, at 18-25.

Plaintiff's testimony, at most, evidences that she has some limitation in walking up hills and in the snow. (ECF No. 46-1, at  22 ("During the snow—which we had some since I had moved and before my son got a car—that they don't treat, you know, the hill where there's just grass or whatnot and even like the section where they do treat, it's not safe to walk on the road because cars come down that corner.") The undersigned does not believe these limitations equate to a substantial limitation in her ability to walk. See Fink v. Richmond, 405 Fed. App'x 719 (4th Cir. 2010) (finding there was no genuine dispute of material fact when plaintiff's was only limited in walking quickly or for long distances and thus not disable under the ADA)[5]; Stewart v. Weast, 228 F. Supp. 2d 660 (D. Md. 2002); see also Harmon v. Sprint United Management

---

[5] The undersigned understands that this is a case against an employer, and not for discrimination of a public service, but is still a case brought pursuant to the ADA.

Corp., 264 F. Supp. 2d 964 (D. Kan. 2003) (considering that plaintiff can walk half a mile, sit for up to five hours, lifting up to 100 pounds, and no physician restrictions other than "prolonged" walking, sitting, or standing was insufficient to classify plaintiff as disabled); Miller v. Wells Dairy, Inc., 252 F. Supp. 2d 799 (N.D. Iowa 2003) (ability to walk well on level surface, but ability to walk less than previously could, walk up three steps, and need to walk slower does not render plaintiff disabled); Zuppardo v. Suffolk County Vanderbuilt Museum, 19 F. Supp. 2d 52 (E.D.N.Y. 1998) (ability to walk more than 1/8th of a mile without stopping rendered plaintiff not disabled within the definition of the ADA); Banks v. Hit or Miss, Inc., 996 F. Supp. 802 (N.D. Ill 1998) (plaintiff's ability to walk unassisted without use of cane or crutch, lack of medical restrictions, and failing to provide any specific facts or evidence to show that plaintiff's walking was substantially limited weighs against plaintiff)

Accordingly, the undersigned **FINDS** Plaintiff has failed to make a showing of fact that Plaintiff's condition substantially limits her ability to walk.  See e.g., Celotex, 477 U.S. at 322.

### b. Plaintiff was qualified to receive the benefits of public service, program, or activity

A plaintiff is "qualified" if she is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). There is no dispute as to whether Plaintiff is permitted to use the transportation system itself nor is there a dispute about whether Plaintiff was qualified to receive the benefit of a deviation request. Therefore, there is not factual dispute as to the second prong.  See Frogge v. Fox, 2018 WL 3132604, at *3 (N.D.W. Va. June 26, 2018) (slip copy).

> **c. Plaintiff was a) excluded from participation or b) denied the benefits of such service, program, or activity done of the basis of Plaintiff's disability.**

Plaintiff is not alleging that she is denied access to the MLTA bus system in general, but rather was denied the deviation request as a result of her disability. (ECF No. 46-1, at 754 ("Q: So the basis for your discrimination claim is really the denial of your second deviation request; is that fair to say? A: Yes.")). Defendant also provided it is Memorandum in Support of Defendant's Motion for Summary Judgment a copy of the denial of the deviation requests. (ECF No. 46-1, at 53, 57). As such, there is no factual dispute among the parties that Plaintiff was denied the benefit of deviation requests that MLTA offers. (ECF No. 46-1, at 74; 53).

The court then must determine whether or not the denial of the deviation request was made as a result of a disability. Plaintiff may satisfy the third prong of a discrimination claim by showing: 1) intentional discrimination or disparate treatment, 2) disparate impact, and 3) failure to make reasonable accommodations. A Helping Hand, LLC v. Baltimore County, 515 F.3d 356 (4th Cir. 2008).  Defendant argues that MLTA's decision to deny the deviation request was not because of her disability, but rather the inability of a large bus to maneuver safely down Madeline Circle and then safely turn around nor was there the ability to change the size of the bus due to the large population that utilizes this particular bus route. Plaintiff contends that "the only way [Defendant} could have come to the conclusion to deny my request was if he acted outside of government regulations. Hence, he acted with bias forming his own opinions versus within the expectations of his employment." (ECF No. 57, at 6).

### i.    Intentional or Disparate Treatment

Plaintiff alleges in her Response to Defendant's Motion to Dismiss that Defendant "knew the rules and chose to omit them." While Plaintiff has not specifically alleged an intentional

discrimination or disparate treatment, the undersigned interprets this to mean that Plaintiff is alleging Defendant had intentionally discriminated against Plaintiff as a result of her disability. In that same document, though, Plaintiff also states that she "never assumed to know the reason why [Defendant] discriminated against [her] by denying [her] request." Id. at 3; see also ECF 46-2, at  43 ("That is the reason that was given but why it was—I feel like there was discrimination but why there was discrimination, I don't know."). Plaintiff has not demonstrated any fact that shows that Defendant intentionally discriminated against her based on her disability. All Plaintiff has provided was mere allegations that while she did not know why she was discriminated against, Defendant chose to discriminate against her. Plaintiff's "feeling" that she was discriminated cannot withstand a motion for summary judgment further factual support. Furthermore, Plaintiff stated that other people have received deviation requests on "uncanny, similarl circumstances with a small road and parking lots." (ECF No. 57, at 7). However, Plaintiff has failed to provide any support for this allegation. The mere allegation itself is insufficient to withstand a Motion for Summary Judgment.

### ii.    Disparate Impact

A disparate impact claim is one where there are practices that appear facially neutral, but harshly affects one group more than another. Raytheon Co. v. Hernandez, 540 U.S. 44 (2003). Plaintiff has not made any allegations that the deviation requests are being treated the same, but that she, as a disabled person, is being harshly affected more than non-disabled people.

### iii.    Reasonable Accommodation

Plaintiff alleges that MLTA has not provided a reasonable accommodation based on Plaintiff's belief that her deviation request is reasonable and accomplishable. A "reasonable accommodation" is "one that gives the otherwise qualified plaintiff with disabilities 'meaningful

access' to the program or services sought." <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 282 (2d Cir. 2003) (quoting <u>Alexander v. Choate</u>, 469 U.S. 287, 301 (1985)).

The Department of Transportation allows for a request for modification as to the accessibility of transportation services for those who are disabled. 49 C.F.R. § 37.169.

> Requests for modification of a public entity's policies and practices may be denied only on one or more of the following grounds:
>
> (1) Granting the request would fundamentally alter the nature of the entity's services, programs, or activities;
>
> (2) Granting the request would create a direct threat to the health or safety of others;
>
> (3) Without the requested modification, the individual with a disability is able to fully use the entity's services, programs, or activities for their intended purpose.

49 C.F.R. § 37.169(c).

Plaintiff has stated that she has no experience driving a commercial vehicle, does not have a commercial license, has never driven and 18-wheeler and a bus, nor is an expert when it comes to driving a bus. (ECF No. 46-1, at 7-8). Plaintiff has not provided any factual basis to support her allegation that Defendant failed to provide her a reasonable modification based on her disability. Plaintiff relies solely on her allegation that a smaller bus or van could be utilized to address the issue. Plaintiff states that based on this belief, the denial must have been because of discrimination.

Defendant alleges that the deviation request was based on MLTA's inability to alter the route. More specifically, Defendant argued that because Plaintiff's deviation request would require a significant alteration to the nature of the service so that the modification request had to be denied. In fact, Defendant has placed on the record an Affidavit that demonstrates that the request for modification would alter the nature of the service, program, or activity. Specifically, Defendant states that he, with nine years of experience in the field of public transportation,

evaluated the deviation request, found that a full-sized bus was unable to safely maneuver the road, and determined that the Green Line Route, which services the Cedar Glen Apartments, requires a full size bus due to the large population that the bus services. Furthermore, there is a bus stop on Scott Avenue, adjacent to Plaintiff's neighborhood, but because Madeline Circle is a dead-end road a full-sized passenger bus is incapable of maneuvering around Madeline Circle and out back on to Scott Avenue.

Accordingly, the undersigned **FINDS** that Plaintiff has not demonstrated that Defendant denied her reasonable accommodation, but the only conclusion supported by any facts is that of Defendant. Plaintiff's allegations that MLTA could utilize another bus is insufficient to withstand summary judgment.

## V.     CONCLUSION

Therefore, for the reasons stated herein, the undersigned **RECOMMENDS** the Defendant's Motion for Summary Judgment (ECF No. 45) be **GRANTED**, and Plaintiff's Amended Complaint (ECF No. 3-5) be **DISMISSED WITH PREJUDICE**.

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of**

**Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record and any party appearing *pro se* by Certified Mail and in compliance with the rules for electronic case filing in the Northern District of West Virginia.

Date: April 12, 2019

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE