IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


VANESSA FROGGE,

      Plaintiff,


    v.               Civil Action No. 1:17cv155
                           (Judge Kleeh)


CRAIG FOX, d/b/a Mountain
Line Transit Authority,

      Defendant.


**MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 60], OVERRULING PLAINTIFF'S OBJECTIONS
[DKT. NO. 61, 57], GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 45], AND DISMISSING
PLAINTIFF'S AMENDED COMPLAINT [DKT. NO. 3-5] WITH PREJUDICE**

Pending before the Court is a Report and Recommendation ("R&R") by United States Magistrate Judge Michael J. Aloi ("Judge Aloi") [Dkt. No. 60]. For the reasons stated below, the Court hereby **ADOPTS** the R&R in its entirety.

## I.  Factual and Procedural Background

Plaintiff, Vanessa Frogge ("Plaintiff" or "Frogge"), initiated this case by filing a *pro se* complaint in the Magistrate Court of Monongalia County in Morgantown, West Virginia, on April 20, 2017 [Dkt. No. 3-1 at 1]. On June 2, 2017, Defendant Craig Fox, d.b.a. the Mountain Line Transit Authority ("MLTA") timely filed a notice of removal of Plaintiff's suit to the Circuit Court

of Monongalia County under W. Va. Code § 50-4-8, at which time the Circuit Court assumed control of the matter [Dkt. No. 3-1 at 30-34]. At the same time, Defendant filed a Motion to Dismiss Plaintiff's Complaint, arguing that the Complaint was in violation of W. Va. Code §§ 29-12A-13; 29-12A-6(d) [Dkt. No. 4-1 at 2]. The Court heard argument on Defendant's Motion to Dismiss on August 15, 2017 [Id.]. The Court ordered Frogge to file an amended complaint within twenty (20) days of the hearing [Dkt. No. 4-1 at 2]. Plaintiff filed an Amended Complaint against Defendant in the Circuit Court of Monongalia County, West Virginia, on August 29, 2017 [Dkt. No 3-5].

The Amended Complaint alleged a claim for discrimination against Defendant, Craig Fox, pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA") [Dkt. No. 3-5]. Plaintiff alleges that Defendant discriminated against her as "an opinionated individual acting on his/her own behalf" when he denied her "Route Deviation Request" in December 2016, and that the conduct "was outside the scope of his employment as a government official" [Dkt. No. 3-5 at 9].

The case was removed to the United States District Court for the Northern District of West Virginia on September 8, 2017. On September 15, 2017, Defendant filed a *Motion to Dismiss* [Dkt. No. 4]. A Roseboro Notice was issued to Plaintiff on October 25, 2017. On November 6, 2017, Frogge, filed a response to Defendant's motion

and a Request for *Pro Se* Packet [Dkt. No. 12]. Defendant did not file a reply. After consideration of the parties' filings, and finding no hearing deemed necessary, the magistrate judge recommended that the *Motion to Dismiss* be granted [Dkt. No. 16]. Upon review of the magistrate judge's R&R of February 27, 2018 [Dkt. No. 16], and liberally construing Plaintiff's Amended Complaint, the Court found that Frogge alleged sufficient facts to survive a motion to dismiss and it rejected the R&R [Dkt. No. 20]. The matter was recommitted to Magistrate Judge Aloi to consider the record and enter rulings or recommendations as appropriate [Id.].

In her initial Complaint, filed in the Magistrate Court of Monongalia County in Morgantown, West Virginia, Frogge asserted a claim of discrimination against Defendant Craig Fox, d.b.a. Mountain Line Transit Authority and sought $10,000 in damages [Dkt. No. 3-1 at 1]. In the Amended Complaint, Frogge brings a claim of discrimination against Defendant, Craig Fox, pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA") [Dkt. No. 3-5]. Plaintiff alleges that within his official capacity, Defendant Fox discriminated against her as "an opinionated individual acting on his/her own behalf" when he denied her 'Route Deviation Request' in December 2016 and that such conduct "was outside the scope of his employment as a government official" [Dkt. No. 3-5 at 9].

According to her Amended Complaint, Frogge suffers from a neck condition and lives in an apartment complex on Scott Avenue in Morgantown, West Virginia. She submitted a route deviation request to Mountain Line, asking for a new bus stop to be established at the top of the hill, presumably, within her apartment complex. She further alleges that "there is no sidewalk connecting [her] apartment to a hill and several flights of stairs leading to the [existing] bus stop" [Dkt. No. 3-5 at 8]. She also alleges that when Defendant conducted a site visit to consider the proposed deviation request, he failed to include consideration for her disability [Id.]. Defendant denied Plaintiff's request determining that the roads in Frogge's apartment complex were too small and did not have an acceptable place for the bus to turn around. Defendant further determined that fundamental changes would have significantly impacted other passengers on the route [Dkt. No. 3-5 at 5, 6].

## II.  STANDARD OF REVIEW

Defendant's *Motion for Summary Judgment* [Dkt. No. 45] is brought pursuant to Rule 56(c) of the Federal Rule of Civil Procedure. Under Rule 56(c),

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

> declarations, stipulations . . . admissions,
> interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish
> the absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. FDIC v. Cashion, 720 F.3d 169, 180 (4th Cir. 2013); News & Observer, 597 F.3d at 576.

Thus, a summary judgment motion should be granted if the nonmovant fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex, 477 U.S. at 323. That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence

demonstrating there is indeed a genuine issue for trial.  Id. at

323-324.  The existence of a mere scintilla of evidence supporting

the nonmovant's position is insufficient to create a genuine issue;

rather, there must be evidence on which a jury could reasonably

find for the nonmovant.  Anderson, 477 U.S. 252.  When determining

whether summary judgment is appropriate, a court must view all

factual evidence and any reasonable inferences to be drawn

therefrom, in the light most favorable to the nonmoving party.

Hoschar, 739 F.3d at 169.

In considering a motion for summary judgment, the court will

not "weigh the evidence and determine the truth of the matter,"

Anderson, 477 U.S. at 249, nor will it make determinations of

credibility.  Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).

If disputes over a material fact exist that "can be resolved only

by a finder of fact because they may reasonably be resolved in

favor of either party," summary judgment is inappropriate.

Anderson, 477 U.S. at 250.  If, however, the nonmoving party "fails

to make a showing sufficient to establish the existence of an

element essential to that party's case," then summary judgment

should be granted because "a complete failure of proof concerning

an essential element . . . necessarily renders all other facts

immaterial."  Celotex, 477 U.S. at 322-323.

## III. DISCUSSION

As stated, this matter is pending on the Report and Recommendation of Magistrate Judge Aloi, recommending that the Court grant Defendant's *Motion for Summary Judgment* [Dkt. No. 45]. "The Court will review de novo any portions of the magistrate judge's Report and Recommendation to which a specific objection is made . . . and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the [parties do] not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D. W. Va. 2007)(citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Moreover, the Court must liberally construe *pro se* pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978). Having conducted a de novo review of the R&R and the record, the Court concludes that Defendant's *Motion for Summary Judgment* [Dkt. No. 45] should be **GRANTED** in its entirety, that Plaintiff's Amended Complaint [Dkt. No. 3-5] be **DISMISSED WITH PREJUDICE**, and that this case be **STRICKEN** from the Court's active docket.

### A.    Public Entity

Plaintiff alleges a violation of Title II of the ADA, 42 U.S.C. § 12132, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to

7

discrimination by any such entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B). "[I]ndividuals sued in their individual capacity are not public entities." Carter v. Maryland, No. JKB-12-1789, 2012 WL 6021370, at *5 (D. Md. Dec. 3, 2012). But "a suit against a state official in his or her official capacity . . . is no different from a suit against the State [or public entity] itself." Will v. Michigan Department of State Police, 492 U.S. 58, 71 (1989).

**B.  ADA Discrimination**

"In general, a plaintiff seeking recovery for violation of [the ADA] must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). "The ADA defines a disability, in part, as a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001)(internal quotation and alteration omitted)(quoting 42 U.S. C. § 12102(2)(A)). An individual "is 'otherwise qualified' for a

program if she 'with or without reasonable modifications . . .
meets the essential eligibility requirements for' participation in
the program." Zimmeck v. Marshall Univ. Bd. of Governors, 106 F.
Supp. 3d 776, 781 (S.D. W. Va. 2015)(quoting 42 U.S.C. 12131(2)).

A plaintiff may satisfy the third prong by alleging "(1)
intentional discrimination or disparate treatment; (2) disparate
impact; [or] (3) failure to make reasonable accommodations." Adams
v. Montgomery College (Rockville), 834 F. Supp. 2d 386, 393 (D.
Md. 2011)(quoting A Helping Hand, LLC v. Baltimore County, 515
F.3d 356, 362 (4th Cir. 2008)). "A 'reasonable accommodation' is
one that gives the otherwise qualified plaintiff with disabilities
'meaningful access' to the program or services sought." Henrietta
D. v. Bloomberg, 331 F.3d 261, 282 (2d Cir. 2003)(quoting Alexander
v. Choate, 469 U.S. 287, 301 (1985)). Nonetheless, a public entity
need not make a modification that would "fundamentally alter the
nature of the service, program, or activity." 28 C.F.R. § 35.130;
see also Tennessee v. Lane, 541 U.S. 509, 531-32 (2004)(explaining
that Title II does not require a public entity to employ any and
all means to make services accessible to persons with disabilities,
and it does not require states to compromise their essential
eligibility criteria for public programs).

## C.  Analysis

With its *Motion for Summary Judgment* [Dkt. No. 45], Defendant
argues that Plaintiff's condition does not meet the ADA's

definition of "disabled." While Defendant does not dispute that Plaintiff has a neck and back condition, it argues that she has failed to demonstrate that the condition "substantially limits one or more" of her "major life activities." Defendant asserts Frogge has no medical restrictions on her lifestyle, ambulates independently, and merely as "some difficulty" walking up hill, playing basketball, and jumping rope [Dkt. No. 46 at 10].

Defendant further argues that no evidence supports Plaintiff's claim of intentional discrimination or disparate treatment. Plaintiff testified at deposition that she did not know why there was discrimination, only that she believed there to have been discrimination [Dkt. No. 46 at 12]. Defendant also contends that it properly demonstrated another reason for the denial of Plaintiff's route deviation request – Defendant's inability to restructure the nature of the bus route. As support, Defendant cites the Code of Federal Regulations applicable to the Department of Transportation. These regulations allow the denial of a modification to a service when, as in this case, a modification would significantly alter the nature of a program or service [Dkt. No. 46 at 14-15]; see also 49 C.F.R. § 37.169(c). Finally, Defendant argues that it is entitled to qualified immunity.

Plaintiff filed Objections[1] [Dkt. No. 18] to the magistrate judge's February 27, 2019, R&R on Defendant's *Motion to Dismiss*, stating that she "never assumed to know the reason why Craig Fox discriminated against [her] by denying [her] request" [Dkt. No. 18 at 3].  Frogge argues that "the only way he could have come to the conclusion to deny my request was if [Defendant] acted outside of government regulations.  Hence, he acted with bias forming his own opinion versus within the exceptions of his employment.  That, more specifically, is the act of discrimination; Craig Fox knew the rules & chose to omit them" [Id. at 6].  Plaintiff states "despite the small roads all over Morgantown & bus routes, the 5 minutes it would take to pick [her] up & the different sized buses that could have been utilized, including a van (New Fit), she was not even offered limited deviation assistance with smaller buses" [Id. at 7].  Plaintiff claims that her "previous deviation request included uncanny, similar circumstances with a small road & parking lot," and was granted[2] [Id.].

---

[1]  While Plaintiff titled her pleading "Objections to a Report and Recommendation," Plaintiff specifically incorporates the document as a Response to Defendant's Motion for Summary Judgment [Dkt. No. 57].  Plaintiff filed a document on April 26, 2019 [Dkt. No. 61], titled "Response to Judge Aloi's Report," which followed the R&R issued by the magistrate judge on April 12, 2019 [Dkt. No. 60].  The Court construes Plaintiff's letter response [Dkt. No. 61] as an objection to the R&R.

[2]  In September 2015, Plaintiff made a deviation request of Defendant which identified the location of the requested deviation as follows:  "Kroger's Grocery Store off of Patteson, across from Rite Aid, UPS Store, & Volcano Sushi: Parallel to WVU Alumni Building off of University Ave./Alumni Drive" [Dkt. No. 46-1 at 51].  The 2015 deviation request was approved after a site visit [Id.].  Nothing in the record indicates that the location at issue in September 2015 was similar or comparable to the location identified by Plaintiff in her December 2016 request.

Defendant argues that Plaintiff offers no support for her conclusory statements regarding the alleged discrimination. Specifically, Plaintiff offers no support for her belief that Defendant could utilize a smaller bus, that MLTA granted a previous and similar deviation request for convenient access, or that the only reason her deviation request could have been denied was because of discrimination. Defendant contends that Plaintiff's claims are not supported by facts or evidence in the record. Defendant also argues that Frogge's new Title VI claim for discrimination based on race is not in the Amended Complaint or supported by evidence.[3]

### 1. Defendant is a public entity

At the motion to dismiss stage, Defendant argued that Plaintiff did not sue Defendant Fox in his official capacity, and the Court found that position unpersuasive. Defendant concedes that Mountain Line is an instrumentality of Monongalia County, West Virginia, organized to provide public transportation [Dkt. No. 4-1 at 5]. Indeed, Defendant's letterhead, on which Plaintiff received her notice of denial, states that "Mountain Line is the business name of the Monongalia County Urban Mass Transit

---

[3] In her March 26, 2019, filing [Dkt. No. 57], Plaintiff discusses a Title VI discrimination claim. Nowhere in the pleadings has Plaintiff presented any allegation that the alleged discrimination she suffered was a result of her race or ethnicity. Even assuming the facts in the light most favorable to the Plaintiff, the Court cannot find that Plaintiff has alleged any circumstances that would support a claim under Title VI.

Authority" [Dkt. No. 46-1 at 53]. Plaintiff brought her claim against Defendant Fox, as Operations Supervisor, who was "doing business as the Mountain Line Transit Authority" [Dkt. No. 1-1 at 1]. Consistent with the prior ruling that Plaintiff sued Defendant in his official capacity, the Court **FINDS** that Plaintiff's ADA claim was brought against a public entity – that is, Defendant Fox in his official capacity and as employee of a public entity. Will, 491 U.S. at 71; Estelle, 429 U.S. at 106.

### 2. Plaintiff is not disabled under the definition of the Americans with Disabilities Act

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." "Substantially limits" is defined as "significantly restricted as to the condition, manner or duration to the condition, manner, or duration under which the average person in the general population can perform that some major life activity," or the inability "to perform a major life activity that the average person in the general population can perform." 29 C.F.R. § 1630.2(j)(l)(ii). "Examples of 'major life activities' are 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Id. Some limitation in "major life activities" does not always equal a substantial limitation." Stewart v. Weast, 228 F. Supp. 2d 660 (D. Md. 2002).

That Plaintiff has a physical impairment is not at issue. Plaintiff testified that she suffers from degenerative disc disease of the neck [Dkt. No. 46-1 at 9], and there is no evidence in the record to suggest otherwise. Defendant states that it does not contest this allegation [Dkt. No. 46 at 7]. However, to qualify as a disability, this condition must "substantially limit one or more" of Plaintiff's major life activities.

No evidence before the Court shows that Plaintiff is substantially limited in a major life activity by her condition. As Defendant notes, there is no evidence that Plaintiff is unable to walk from her door step to Scott Avenue to utilize the bus stop. There is also no evidence about Plaintiff's inability to walk generally, and no evidence that Plaintiff's walking is restricted by a physician. Plaintiff failed to present specific evidence to establish her condition as an impairment that substantially limits the major life activity of walking, and she admitted in her deposition that the only major life activity implicated by her claim is the ability to walk[4] [Dkt. No. 46-1 at 22, Exh. B at 74:22-77:5]. Plaintiff conceded that no physician had placed any

---

[4] *See* Dkt. No. 46-1 at 22 (Q: You're not claiming that you cannot walk to the bus stop; is that correct? A: That is around the discrimination. That is part - I would say, yes, it is part of the claim because if I had the deviation request I wouldn't have to walk up the mountain to the bus stop from where my apartment is. If I had the deviation request it wouldn't be me having to walk up a hill to go to the bus stop.")

medical restrictions on her associated with her ability to walk [Id. at Exh. B at 57:15-60:12].

At deposition, Frogge testified as follows:

Q:   Okay.  Has anyone ever told you you shouldn't climb
     stairs with your condition.
A:   I don't recall any lower body restrictions at all.
Q:   So no doctors told you you can't walk under your
     conditions?
A:   No, I don't think so.

. . .

Q:   Has anyone told you you can't ambulate?
A:   Not that I – not that I recall.  The terms sounds
     familiar  but I don't recall anyone telling me that
     I cannot walk or     ambulate.
Q:   Has any doctor instructed you you should be walking
     on the sidewalks and not in the road or in the
     grass?
A:   None that I can recall.

. . .

Q:   Does that say "Can ambulate independently"?
A:   It does.
Q:   And is "yes" circled?
A:   It is.

[Dkt. No. 46-1 at 18-25].

While Plaintiff's testimony indicates that she has some limitation in walking up hills and in the snow [Dkt. No. 46-1 at 22], these limitations do not equate to a substantial limitation in her ability to walk.  See Fink v. Richmond, 405 Fed. App'x 719 (4th Cir. 2010)(finding there was no genuine issue of material fact when plaintiff was only limited in walking quickly or for long distances and thus not disabled under the ADA); Stewart v. Weast,

228 F. Supp. 2d 660 (D. Md. 2002); <u>see</u> <u>also</u> <u>Harmon v. Sprint United</u> <u>Management Corp.</u>, 264 F. Supp. 2d 964 (D. Kan. 2003)(finding that plaintiff can walk half a mile, sit for up to five hours, lift up to 100 pounds, and has no physician restrictions other than "prolonged" walking, sitting, or standing, as insufficient to classify plaintiff as disabled); <u>Miller v. Wells Dairy, Inc.</u>, 252 F. Supp. 2d 799 (N.D. Iowa 2003)(ability to walk well on level surface, but ability to walk less than previously could, walk up three steps, and need to walk slower does not render plaintiff disabled); <u>Zuppardo v. Suffolk County Vanderbilt Museum</u>, 19 F. Supp. 2d 52 (E.D.N.Y. 1998)(ability to walk more than 1/8th of a mile without stopping rendered plaintiff not disabled within the definition of the ADA); and <u>Banks v. Hit or Miss, Inc.</u>, 996 F. Supp. 802 (N.D. Ill. 1998)(plaintiff's ability to walk unassisted without use of cane or crutch, lack of medical restrictions, and failing to provide any specific facts or evidence to show that plaintiff's walking was substantially limited weighs against plaintiff).

The Court adopts the recommendation of the magistrate judge and **FINDS** that Plaintiff has failed to make a showing of fact that her condition substantially limits her ability to walk, and therefore, that she is disabled under the ADA.[5]

---

[5] While the Court finds that Plaintiff has not satisfied a necessary threshold requirement for her public accommodations ADA claim, it will nevertheless

### 3. Plaintiff was qualified to receive the benefits of public service, program, or activity

A plaintiff is "qualified" if she is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Regardless of disability, there is no dispute as to whether Plaintiff is permitted to use the public transportation system, or whether she is eligible to submit a deviation request and potentially benefit from a deviation. Therefore, there is not a factual dispute as to the second prong. See Frogge v. Fox, No. 1:17-cv-155, 2018 WL 3132604, at *3 (N.D.W. Va. June 26, 2018)(slip copy).

### 4. Plaintiff was not excluded from participation in or denied the benefits of such service, program, or activity on the basis of disability

Plaintiff claims that she was denied the deviation request from MLTA as a result of her disability [Dkt. No. 46-1 at 754]. The deviation requests submitted by Frogge are in the record before the Court and confirm the denial of her December 2016 request[6] [Id.

---

continue its analysis of the claim and the summary judgment record given Plaintiff's status as a *pro se* litigant.

[6] Plaintiff sought a deviation request from Defendant in September 2015 which identified the location of the requested deviation as follows: "Kroger's Grocery Store off of Patteson, across from Rite Aid, UPS Store, & Volcano Sushi: Parallel to WVU Alumni Building off of University Ave./Alumni Drive" [Dkt. No. 46-1 at 51]. The 2015 deviation request was approved after a site visit [Id.]. Plaintiff submitted the deviation request that is now at issue on December 28, 2016, and identifies the following as the location: "Into the Cedar Glen

at 53, 55, 57].  Thus, there is no factual dispute that Plaintiff was denied the benefit of a service deviation that Mountain Line offers [Id. at 74, 53].

The Court must determine whether Plaintiff's alleged disability was the basis of or "played a 'motivating role'" in Defendant's denial of her deviation request.  See Thompson v. Va. Dept. of Game and Inland Fisheries, No. 1:06-cv-65, 2007 WL 984225, at *3 (W.D. Va. March 30, 2007)(citing Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999)).  The Fourth Circuit Court of Appeals has recognized "three distinct grounds for relief" as to this element of an ADA claim:  1) intentional discrimination or disparate treatment, 2) disparate impact, and 3) failure to make reasonable accommodations.  A Helping Hand, LLC v. Baltimore County, 515 F.3d 356, 362 (4th Cir. 2008).  Defendant argues that the decision to deny Plaintiff's request was based on the inability of a large bus to safely maneuver down Madeline Circle to Plaintiff's residence, and then to turn around and exit Plaintiff's apartment complex.  Defendant also states that it did not have the ability to change the size of the bus due to the large population that utilizes the Green Line Route, the bus route at issue.

---

Apartment Complex, toward the right (second to last set of townhomes at the bottom of the hill) #39 *New Request due to move; see previou[s] request*" [Dkt. No. 46-1 at 55].  The second request was denied by letter dated December 30, 2016 [Dkt. No. 46-1 at 53].  The denial letter explained "[u]pon inspection of this facility, bus service fronts this complex and there are several riders that use this stop to access our service.  Unfortunately, the stop at the entrance of Cedar Glen is as close as we can get to your residence" [Id.].

Plaintiff claims that "the only way [Defendant] could have come to the conclusion to deny my request was if he acted outside of government regulations. Hence, he acted with bias forming his own opinions versus within the expectations of his employment" [Dkt. No. 57 at 6]. Plaintiff offers nothing outside of her belief as evidence that her deviation request was denied on the basis of discrimination.

### i. Intentional or Disparate Treatment

As the magistrate judge notes in the R&R, Plaintiff states that she "never assumed to know the reason why Craig Fox discriminated against me by denying my request" [Dkt. No. 57 at 3]; see also [Dkt. 46-2 at 43]. Plaintiff has not demonstrated any fact that shows Defendant intentionally discriminated against her because of her disability. There is no genuine issue of material fact for trial as to whether Plaintiff was subjected to intentional discrimination.

### ii. Disparate Impact

A disparate impact claim is one where there are practices that appear facially neutral, but harshly affect one group more than another. Raytheon Co. v. Hernandez, 540 U.S. 44 (2003). Plaintiff does not allege that MLTA treats any group differently when it considers deviation requests, but that she, as a disabled person, is being more harshly affected than non-disabled people.

Accordingly, there exists no genuine issue of material fact as to a disparate impact claim.

### iii. Reasonable Accommodation

Plaintiff alleges that Defendant did not provide a reasonable accommodation[7] based on her belief that the specific deviation she requested was reasonable and capable of being accomplished. A "reasonable accommodation" is "one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." Henrietta D. v. Bloomberg, 331 F.3d 261, 282 (2d Cir. 2003)(quoting Alexander Choate, 469 U.S. 287, 301 (1985)).

The Department of Transportation allows for a request for modification as to the accessibility of transportation services for those who are disabled. 49 C.F.R. § 37.169.

> Requests for modification of a public entity's policies and practices may be denied only on one or more of the following grounds:
>
> (1) Granting the request would fundamentally alter the nature of the entity's services, programs, or activities;
>
> (2) Granting the request would create a direct threat to the health or safety of others;

---

[7] For the purpose of public accommodations ADA claims under Title II, the term "reasonable accommodations" is derived from the employment discrimination provisions of Title I of the ADA, and is essentially synonymous with the term "'reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services.'" See 42 U.S.C. § 12131(2). Reasonable modifications are what Title II of the ADA requires a public entity to provide. See Ash v. Md. Transit Admin., No. ELH-18-1216, 2019 WL 1129439, at *5 (D. Md. March 12, 2019)(citations omitted).

> (3) Without the requested modification, the individual
> with a disability is able to fully use the entity's
> services, programs, or activities for their intended
> purpose.

49 C.F.R. § 37.169(c).

The record before the Court demonstrates that Plaintiff has no experience driving a commercial vehicle, does not have a commercial driver's license, has never driven an 18-wheeler or bus, and has no expertise when it comes to driving or maneuvering a passenger bus [Dkt. No. 46-1 at 7-8]. Plaintiff provides no factual support for her allegation that Defendant failed to provide a reasonable modification based on her disability, and instead relies solely on her belief that a smaller bus or van could be utilized for the particular route on which Plaintiff's residence is located. Based on this personal belief, Plaintiff feels that Defendant's denial of the December 2016 deviation request must have been discriminatory.

Defendant has demonstrated that Plaintiffs' deviation request was based on MLTA's inability to alter the bus route. Defendant also established that Plaintiff's request would require a significant alteration to the nature of the transportation service provided by Defendant. Evidence produced by Defendant demonstrates that the requested deviation would alter the nature of the service, program, or activity, and that a full-sized bus would be unable to safely maneuver the road to and from Plaintiff's

residence, an apartment complex with only one point of entry and exit. After evaluating Plaintiff's request, Defendant determined that the Green Line Route, which services the Cedar Glen Apartments, requires a full-size bus due to the large population serviced by the route. Furthermore, there is a bus stop on Scott Avenue which is adjacent to Plaintiff's apartment complex on Madeline Circle, a dead-end road. After a site inspection, Defendant determined that a full-sized bus could not safely maneuver in to and around Madeline Circle and exit on to Scott Avenue. Plaintiff has not produced evidence to demonstrate that Defendant denied her a reasonable accommodation by failing to utilize another bus or van to access her residence.

Accordingly, the summary judgment record suggests that Plaintiff's alleged disability was neither considered by Defendant nor a motivating factor in MLTA's denial of Plaintiff's December 2016 deviation request.[8] Due to applicable DOT regulations and the specific location and characteristics of Plaintiff's apartment complex, Defendant would have rejected Plaintiff's deviation request regardless of her health conditions or disability. No genuine issue of material fact exists as to the ADA claim alleged

---

[8] In fact, the record suggests the opposite. Defendant granted Plaintiff's deviation request in 2015 after a site visit revealed such a deviation was feasible – unlike the deviation request at issue here. Regardless, it is illogical to believe Defendant harbors discriminatory animus toward Plaintiff on any basis, including unlawful disability discrimination, when it previously granted her the deviation she requested under drastically different circumstances. Such discriminatory tendencies are not as easily ignored as Plaintiff suggests.

by Plaintiff in her Amended Complaint and argued in her pleadings; accordingly, the Court **FINDS** that Defendant is entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court:

1.  **ADOPTS** the Report and Recommendation in its entirety [Dkt. No. 60], recommending that Defendant's *Motion for Summary Judgment* [Dkt. No. 45] be granted and Plaintiff's Amended Complaint [Dkt. No. 3-5] be dismissed with prejudice;

2.  **OVERRULES** Plaintiff's Objections [Dkt. Nos. 61, 57];

3.  **GRANTS** Defendant's *Motion for Summary Judgment* [Dkt. No. 60];

4.  **DISMISSES WITH PREJDICE** Plaintiff's Amended Complaint [Dkt. No. 3-5]; and

5.  **STRIKES** this case from the Court's active docket.

If the Plaintiff should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure.

It is so **ORDERED**.

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies

of both orders to counsel of record and to the <u>pro</u> <u>se</u> Plaintiff, certified mail, return receipt requested.

DATED: June 10, 2019

THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE